# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| PEERLESS INSURANCE COMPANY, | CASE NO. 09 CV 5 JLS (NLS) |
|---|---|
| Plaintiff, | **ORDER: (1) GRANTING ST. PAUL SURPLUS LINES INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT; and (2) DENYING PEERLESS INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| ST. PAUL SURPLUS LINES INSURANCE COMPANY, | |
| Defendant. | (Doc. Nos. 18, 20) |

Presently before the Court are two cross-motions for summary judgment or, in the alternative, partial summary judgment. Plaintiff and Counter-Defendant Peerless Insurance Company ("Peerless") filed its motion for summary judgment or partial summary judgment on January 19, 2010. (Doc. No. 18.) A day later, Defendant and Counter-Claimant St. Paul Surplus Lines Insurance Company ("St. Paul") filed a separate motion for summary judgment or partial summary judgment. (Doc. No. 20.) Also before the Court are both parties' oppositions and replies. For the reasons stated below, the Court **HEREBY GRANTS** St. Paul's motion for summary judgment in its entirety and **DENIES** Peerless' motion for summary judgment in its entirety.

//

# BACKGROUND[1]

This action is an insurance coverage dispute between Peerless and St. Paul arising from the underlying action entitled *Rodriguez v. EMK Products, et al*, in Monterey Superior Court (the "Rodriguez action"). On January 11, 2004, Mr. Rodriguez suffered an industrial accident while in the course and scope of his employment with Carvalho Fisheries ("Carvalho"). The accident ultimately resulted in the amputation of Mr. Rodriguez's left leg below the knee. Mr. Rodriguez filed a personal injury law suit against EMK Products ("EMK"). EMK was the owner of the property where Mr. Rodriguez was injured and had leased the property to Carvalho.

EMK had insurance coverage by both Peerless and St. Paul. EMK was St. Paul's named insured under a Commerical General Liability Policy ("CGL") for the February 11, 2003 to February 11, 2004 time period. (*See* Fitts Decl. ISO St. Paul MSJ, Ex. 1 ("St. Paul Policy").) Further, EMK was added by endorsement as an additional insured on a policy issued by Peerless to Carvalho, pursuant to the terms of the lease agreement between Carvalho and EMK. (*See* Halferty Decl. ISO Peerless MSJ, ¶ 2 & Ex. A ("Peerless Policy"); *see also id.*, Ex. B ("Lease Agreement").) Both policies were in effect at the time of Mr. Rodriguez's injury.

The St. Paul Policy provides that the agreement covers "bodily injury and property damage liability that: happens while this agreement is in effect; and is caused by an event." (St. Paul Policy at 37-38.) The St. Paul Policy further provides that St. Paul will "have the right and duty to defend any protected person against a claim or suit for injury or damage covered by this agreement." (*Id.* at 40-41.) The St. Paul Policy, however, contains an "other insurance" provision, which reads in pertinent part:

> This agreement is primary insurance. If there is any valid and collectible other insurance for injury or damage covered by this agreement, the following applies in connection with that other insurance:
> . . .
> Primary or excess other insurance. When there is primary other insurance, we'll share with that other insurance any damages for injury or damage covered by this agreement. We'll do so with one of the methods of sharing described in the Methods of sharing section. However, we'll apply this agreement as excess insurance over the part or parts of any primary or excess other insurance that provide:
> • property or similar coverage for property damage to your work;
> • property or similar coverage for property damage to premises that you rent, lease,

---

[1] Unless otherwise noted, the background is not materially in dispute.

>  or borrow from others . . .
> • aircraft, auto, or watercraft bodily injury or property damage coverage; or
> • *protection for you as an additional insured or additional protected person.*

(*Id.* at 62 (emphasis added).) The St. Paul Policy goes on to assert that, when the policy is excess insurance, St. Paul "won't have a duty to defend the protected person . . ." except for in excess of the amount of damages that all other insurances would pay. (*Id.*).

The Peerless Policy contains two provisions at issue in this matter. First, the Peerless Policy contains a so-called "employee exclusion provision." The Peerless Policy provides that Peerless:

> will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages . . .

(Peerless Policy at 75.) The Policy, however, further provides that the insurance does not apply to "Employer's Liability":

> "Bodily injury" to (1) An "employee" of the insured arising out of an in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business . . .
> . . .
> This exclusion applies: (1) Whether the insured may be liable as an employer or in any other capacity; and (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

(*Id.* at 76.)

Second, the Peerless Policy contains an "other insurance" provision similar to the St. Paul Policy. The Peerless Policy provides, in pertinent part:

> If other valid and collectible insurance is available to the insured for a loss we cover . . . our obligations are limited as follows:
>
> a. Primary Insurance
> This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.
> b. Excess Insurance
> This insurance is excess over:
> (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:
> . . .
> (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

(*Id.* at 84.)

After Mr. Rodriguez filed his personal injury lawsuit against EMK, on or about April 25, 2006, EMK tendered its defense to St. Paul. St. Paul thereafter tendered the action to Peerless on or about April 27, 2006. By letter dated May 5, 2006, Peerless accepted EMK's "tender on a 50/50 basis with St. Paul Travelers pursuant to the terms and conditions of the policy issued to Carvalho." (Tancredy Decl. ISO St. Paul MSJ, Ex. C.) The letter indicated that its basis for accepting the offer on a 50/50 basis was due to the "other insurance" provisions in both policies. (*Id.*) On May 8, 2006, St. Paul referred EMK's defense to the law firm of Kennedy, Archer & Hurray, who was informed that the billing would be split 50/50 with Peerless. (*See id.*, Ex. D.)

Between May 2006 and February 2007, though St. Paul continued to split payments on a 50/50 basis, St. Paul repeatedly insisted that the Peerless Policy required Peerless to provide EMK with a full defense and indemnity of the Rodriguez action, based on the "other insurance" provision in the St. Paul Policy. (*See id.*, ¶ 6 & Exs. E-K.) On February 27, 2007, however, Peerless informed St. Paul that it would provide EMK with full defense and indemnity, but reserved its rights to dispute coverage at a later date. (*See id.*, Ex. N.) The law firm of McNamara, Dodge, Beatty, Slattery, Pfalzer, Borges & Brothers ("McNamara") substituted in as counsel for EMK in the Rodriguez action and St. Paul ceased making payments and withdrew from the defense of EMK. (*Id.* ¶¶ 9, 10.)

On or about May 9, 2008, Peerless settled the Rodriguez action on behalf of EMK, agreeing to pay Mr. Rodriguez $265,000.00. (St. Paul Request for Judicial Notice ("RJN"), Ex. A, ¶ 13.) The Rodriguez action was dismissed on June 13, 2008. (*Id.*, Ex. G.)

Peerless initiated the present action in California Superior Court on November 12, 2008. (Doc. No. 1.) The action was removed to this Court on January 2, 2009. (*Id.*) On January 9, 2009, St. Paul answered the complaint and filed counter-claims against Peerless seeking recovery of the amount of defense fees through February 27, 2007 and declaratory judgment. (Doc. No. 4, ¶¶ 32, 38.) Peerless filed a First Amended Complaint ("FAC") on April 13, 2009, seeking declaratory relief, equitable indemnity, equitable contribution, and equitable subrogation of all or some of its expenditures in defending and settling the Rodriguez action. (Doc. No. 10.) St. Paul

1 answered the FAC and asserted the same counter-claims on April 30, 2009.  (Doc. No. 13.)
2 Peerless answered the counter-claims on May 7, 2009.  (Doc. No. 14.)

3      On January 19, 2010, Peerless filed the present motion for summary judgment or partial
4 summary judgment.  (Doc. No. 18.)  St. Paul filed its opposition and supporting documents on
5 March 19, 2010 (Doc. No. 28) and Peerless filed its reply on April 2, 2010.  (Doc. No. 39.)  On
6 January 20, 2010, St. Paul filed a cross-motion for summary judgment or partial summary
7 judgment.  (Doc. No. 20.)  Peerless filed its opposition on March 19, 2010 (Doc. No. 26) and St.
8 Paul filed its reply on April 2, 2010.  (Doc. No. 38.)  A hearing on both motions was held on May
9 13, 2010 before this Court and was thereafter taken under submission.

## LEGAL STANDARDS

### I.    Motion for Summary Judgment

12      Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1)
13 the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement
14 to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Material,"
15 for purposes of Rule 56, means that the fact, under governing substantive law, could affect the
16 outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v.*
17 *Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  For a dispute to be "genuine," a reasonable jury must
18 be able to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248.

19      The initial burden of establishing the absence of a genuine issue of material fact falls on the
20 moving party.  *Celotex*, 477 U.S. at 323.  The movant can carry his burden in two ways: (1) by
21 presenting evidence that negates an essential element of the nonmoving party's case; or (2) by
22 demonstrating that the nonmoving party "failed to make a sufficient showing on an essential
23 element of her case with respect to which she has the burden of proof."  *Id.* at 322–23.  "Disputes
24 over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec.*
25 *Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

26      Once the moving party establishes the absence of genuine issues of material fact, the
27 burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed
28 fact remains.  *Celotex*, 477 U.S. at 324.  The nonmoving party cannot oppose a properly supported

1 summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings."
2 *Anderson*, 477 U.S. at 256. When ruling on a summary judgment motion, the court must view all
3 inferences drawn from the underlying facts in the light most favorable to the nonmoving party.
4 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**II.     Interpretation of Insurance Policies**

6       The "[i]nterpretation of an insurance policy is a question of law and follows the general
7 rules of contract interpretation." *TRB Invs., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal.4th 19, 27
8 (2006); *see also Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998).
9 Construction of a policy is governed by state law. *Humboldt Bank v. Gulf Ins. Co.*, 323 F. Supp.
10 2d 1027, 1032 (N.D. Cal. 2004). Under California law, "words in an insurance policy are to be
11 read in their plain and ordinary sense. Ambiguity cannot be based on a strained instead of
12 reasonable interpretation of a policy's terms . . ." *McKee v. State Farm Fire & Cas. Co.*, 145 Cal.
13 App. 3d 772, 776 (1983) (internal citations omitted). Further, "[p]olicies of insurance, like other
14 contracts must be read as a whole with each part being read in conjuction with other portions
15 thereof." *Hartford Accident & Indemnity Co. v. Sequioa Ins. Co.*, 211 Cal. App. 3d 1285, 1298
16 (1989). California law makes clear that insurance coverage is interpreted broadly so as to afford
17 the insured the greatest possible protections, whereas exclusion clauses are interpreted narrowly
18 against the insurer. *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 647-48 (2003). "[T]he
19 burden is on the insurer to prove that a claim is specifically excluded." *Aydin Corp. v. First State*
20 *Ins. Co.*, 18 Cal.4th 1183, 1188 (1998).

21                            **DISCUSSION**

**I.     Peerless Employee Exclusion Provision**

23       Peerless first seeks a declaratory judgment regarding whether the language of the Peerless
24 Policy, specifically the employee exclusion provision, precludes coverage of EMK in the
25 underlying action. Peerless argues that it was not required to provide coverage for EMK because
26 the Peerless Policy expressly excludes coverage for a "bodily injury" to an "employee of the
27 insured" regardless of "whether the insured may be liable as an employer or in any other
28 capacity." (Peerless MSJ at 8-9; Peerless Opp. to St. Paul MSJ at 5-9; *see also* Peerless Policy at

76.) St. Paul, however, argues that the employee exclusion provision does not apply to coverage of the Rodriguez action because Mr. Rodriguez was not an employee of the "insured," EMK, but only an employee of Carvalho. (St. Paul MSJ at 10-14; St. Paul Opp. to Peerless MSJ at 9-13.) St. Paul cites several cases to support its proposition that an employee exclusion clause applies only to employees of the insured. All of them support St. Paul's position.

The first case in California interpreting an employee exclusion clause is *Pleasant Valley Assn. v. Cal-Farm Ins. Co.*, 142 Cal. App. 2d 126 (1956). In *Pleasant Valley*, Cal-Farm denied coverage of additional insureds based on its exclusion provision which excluded coverage for "bodily injury to . . . any employee of the insured, while engaged in the employment . . . if benefits therefor are either payable or required to be provided under any workmen's compensation law; nor to any obligation for which the insured or any company, as his insurer, may be held liable under any workmen's compensation law . . ." 142 Cal. App. 2d at 129. Finding that the question of whether coverage extended to the additional insured given this exclusion provision was a matter of first impression, the California appellate court examined the exclusion clause "under general principles of insurance law." *Id.* at 132.

The court first noted that "since the . . . policy was drafted by Cal-Farm, any ambiguities or uncertainties the policy might contain are to be construed against the insurer." *Id.* (citing *Arenson v. Nat'l Auto. & Cas. Ins. Co.*, 45 Cal. 2d 81, 83 (1955)). Then, the Court ultimately held "[t]he exclusion clause must be read as a whole and we think leads inescapably to the conclusion that it means only that the coverage, whether of the named or the additional insured, does not apply to any one who has liability under workmen's compensation laws." *Id.* at 134. Accordingly, because the additional insureds under the policy were not employers of the injured employee and therefore not obligated under the worker's compensation laws, they were not excluded from coverage. *Id.*

Subsequent cases have clarified the holding in *Pleasant Valley*. In *Campidonica v. Transport Indemnity Co.*, 217 Cal. App. 2d 403 (1963), a California appellate court again rejected the contention that the insurance company was not obligated to defend or indemnify on the basis of an employee exclusion provision. The *Campidonica* court stated: "This precise contention was rejected in *Pleasant Valley* . . . , where the court held that an exclusion clause of this type applies

only when the injured party was employed by the *particular* insured, named *or* additional, who seeks the protection of the policy. In the present case, Bridge [the injured party] was clearly not an employee of appellants, who were additional insureds under the policy." 217 Cal. App. 2d at 407; *see also United States Fire Ins. Co. v. Transport Indemnity Co.,* 244 Cal. App. 2d 110, 117 (1966) ("The California cases clearly hold that an exclusionary provision such as the foregoing would apply only to employees of an insured person who owes a liability to the plaintiff." (citing *Pleasant Valley* and *Campdonica*)).

In the instant case, the party seeking coverage is EMK. EMK did not employ Mr. Rodriguez, but merely leased the premises to Carvalho, who in turned employed Mr. Rodriguez. It is undisputed that Mr. Rodriguez was an employee of Carvalho, who Mr. Rodriguez sought and received worker's compensation from. Under California law, therefore, Carvalho, but not EMK, would be excluded from coverage based on the Peerless Policy's employee exclusion provision.

Peerless, however, attempts to distinguish *Campdonica* and *U.S. Fire Insurance Company*. (Peerless Opp. to St. Paul MSJ at 7.) Peerless contends that its "policy contains a broader, specific exception for bodily industrial injuries." (*Id.*) Specifically, Peerless refers to the language in the exclusion provision which states that the exclusion applies "whether the insured may be liable as an employer or in any other capacity" as well as "to any obligation to share damages with or repay someone else who must pay damages because of the injury." (Peerless Policy at 76.) Peerless contends that "[t]he only rational interpretation of this language is that the contracting parties intended to exclude coverage for all employment-related personal injuries, regardless of who the employee was working for at the time of injury." (Peerless Opp. to St. Paul MSJ at 8.) Peerless, however, does not cite to any cases which hold that such language negates the reasoning or rationale in *Pleasant Valley* or its progeny for why the employee exclusion clauses do not preclude coverage over non-employers of the injured party, i.e. because they are not obligated under worker's compensation laws. Moreover, Peerless' contention that the additional language that the exclusion applies "whether the insured may be liable as an employer or in any other capacity" is unavailing. California law teaches the court that all ambiguities are to be resolved in favor of the insured. *See Pleasant Valley*, 142 Cal. App. 2d at 132 (citing *Arenson*, 45 Cal. 2d at

1  83). Here, the additional language, at best, creates an ambiguity as to what "any other capacity"
2  means and the effect it has on the above analysis.[2] EMK is the insured and to preclude coverage
3  would be to read the policy against the insured.
4        Accordingly, the Court finds that the employee exclusion language in the Peerless Policy
5  does *not* exclude coverage of EMK, as it is undisputed that Mr. Rodriguez was not an employee of
6  EMK.

7  **II.    St. Paul's and Peerless' Other Insurance Provisions**

8        In the alternative, Peerless seeks a declaratory judgment regarding the coverage effect of
9  the "other insurance" provisions in the Peerless and St. Paul Policies, arguing that St. Paul must
10 reimburse Peerless for one-half of its expenditures in defending and indemnifying EMK for
11 settling the Rodriguez action. (Peerless MSJ at 10; Peerless Opp. to St. Paul MSJ at 9.) Peerless
12 contends "the great weight of California" case law holds that, when two "other insurance" clauses
13 are in conflict, to enforce one or the other would be inequitable. Therefore, Peerless asserts that
14 the majority of California courts have held that co-insurers with conflicting other insurance clauses
15 should share expenses on a pro rata basis. (Peerless MSJ at 9-18; Peerless Opp. to St. Paul MSJ at
16 9-15.) There are several cases which do, in fact, recognize this trend.[3] St. Paul, however, argues

---

[2] The ambiguity is this: Peerless contends it precludes coverage to EMK, even though Mr. Rodriguez was not an employee of EMK. St. Paul contends that the provision "bars coverage for damages sought against the insured for injury suffered by the insured's employee, regardless of whether the insured is sued directly by the employee or is sued by another party for indemnity for the employee's injury. In this case, there would be no coverage [by Peerless] for Rodriguez's employer, Carvahol, under the Peerless Policy if Rodriguez sued Carvalho directly or if EMK cross-complained against Carvalho for indemnity for any sums owed by EMK in the *Rodriguez* Action." (St. Paul Opp. to Peerless MSJ at 12.) Both are reasonable, not strained, interpretations. *See Mckee*, 145 Cal. App. 3d at 776. Peerless' counsel essentially conceded at oral argument that such an ambiguity existed.

[3] *See, e.g.*, *Edmondson Prop. Mgmt. v. Kwock*, 156 Cal. App. 4th 197, 203 (2007) ("The modern trend is to require contribution where there is the same level of insurance for the same risk, regardless of 'other insurance' language."); *Hartford*, 110 Cal. App. 4th at 726 (recognizing that "the recent trend is against rigid enforcement of excess only clauses" and that, "although 'there is authority that an excess only clause will prevail over either a pro rata clause or escape clause, the recent trend is to pro rate the loss between the carriers.'" (quoting *Commerce & Industry Ins. Co. v. Chubb Custom Ins. Co.*, 75 Cal. App. 4th 739 (1999))); *Fireman Fund's Ins. Co. v. Maryland Casualty Co.*, 65 Cal. App. 4th 1279, 1305 (1998) ("[S]everal recent opinions . . . have held that in cases of conflict between liability insurance policies stating coverage is excess over all other available insurance . . . policies, the 'excess-only' policies must contribute pro rata to the coverage afforded by the 'proration-only' policies."); *see also Dart Industries, Inc. v. Commercial Union Ins. Co.*, 28 Cal. 4th 1059, 1080 (recognizing that, partially due to public policy concerns, "[t]he modern trend is to require equitable

1  that the other insurance provisions at issue in this case are not in conflict, and therefore pro rata
2  coverage is not warranted, relying on *Hartford Accident & Indemnity Co. v. Sequioa Ins. Co.*, 110
3  Cal. App. 4th 710 (2003). In order to fully understand the parties' position, a review of California
4  case law is necessary.

5        Peerless relies in large part on the case of *Fireman's Fund Ins. Co. v. Maryland Casualty
6  Co.*, 65 Cal. App. 4th 1279 (1998). In *Fireman's Fund*, the California court of appeal analyzed the
7  relationship between two "other insurance" clauses, those of Fireman's Fund Insurance Company
8  and Maryland Casualty Company. *Id.* It provided that the insurance was primary unless other
9  insurance was primary, then they would share with that other insurance. *See id.* at 1303 n.8. It
10 further provided, however, that it was "excess over any other insurance, whether primary or
11 excess, contingent on any other basis: . . . That is valid and collectible insurance including but not
12 limited to coverage as an additional insured under another policy against such losses as may be
13 covered by this policy." *Id.* at 1303 & n.8. Maryland's "other insurance" clause, however,
14 "provid[ed] for *pro rata* computation of loss allocation among insurers, as opposed to excess
15 coverage." *Id.* at 1303.

16       In reviewing the trial court's pro rata allocation, the court of appeal in *Fireman's Fund* first
17 noted that "[c]ontractual terms of insurance coverage are honored whenever possible" so long as
18 "no prejudice to the intrests of the insured will ensue." *Id.* at 1304. The court, however,
19 recognized that in some instances, such as "where two or more primary insurers' policies contain
20 excess 'other insurance' clauses purporting to be excess to each other," courts may equitably
21 prorate the loss allocation among the insurers. *Id.* at 1304-05. The court of appeal went on to note
22 that "'excess-only' provisions often collide with 'pro-rata' provisions" and that excess only
23 provisions have often been considered "escape clauses," which are generally against California
24 public policy.[4] *Id.* at 1305. The *Fireman's Fund* court explained:

25       Several courts have noted that imposing the entire liability for a loss on the insurer with a

---

27 contributions on a pro rata basis from all primary insurers regardless of the type of 'other insurance' clause in their policies" (citing cases)).

28     [4] "Escape clauses" are "other insurance" clauses "whereby coverage purports to disappear in the presence of other insurance." *Id.* at 1305.

>policy providing for pro rata coverage would annul that policy's language, and create the anomaly that courts will only predictably enforce proration between policies when they all have conflicting 'excess other insurance' language *barring* proration.  Giving 'excess other insurance' clauses priority over policies is completely unrelated to the historical purpose of such 'other insurance' clauses, which was to prevent multiple recoveries by *insureds* in cases of overlapping insurance policies coverage for the same loss.

*Id.* at 1306; *see also Carmel Develop. Co. v. RLI Ins. Co.*, 126 Cal. App. 4th 502, 508-09 (2005) (quoting same).

Accordingly, the court in *Fireman's Fund* reviewed the equities of the policies and circumstances and "conclude[d] the trial court correctly made a pro rata allocation of the two insurers' obligations for equitable contribution to the costs of indemnification and defense based on their respective total time on the risk, *including* the period covered by the four Fireman's Fun policies with 'excess other insurance' clauses." *Id.* at 1307 (emphasis in original).

However, a California court of appeal in *Hartford* distinguished *Fireman's Fund* and similar cases. *See generally Hartford Accident*, 110 Cal. App. 4th 710.  In *Hartford*, the court affirmed the trial court's grant of Travelers Indemnity Company's motion for summary judgment and its finding that Travelers' insurance coverage was excess over Hartford's primary coverage. *Id.* at 715, 716.  The insured was MPOC, who was an additional insured under the Hartford policy and a named insured on Travelers' policy. *See generally id.* at 712-16.

The *Hartford* court first found that "the allocation of damages between coinsurers is an equitable matter for the trial court" and that the appellate court's standard of review is abuse of discretion. *See id.* at 724-25.  The court then noted the holding in *Fireman's Fund*, and that it "[did] not disagree with the discussion or result in [that] case" but found "that its facts differ significantly" from the facts and equities of the *Fireman's Fund* case. *Id.*   The court summarized the reasoning and conclusion in *Fireman's Fund* and noted its awareness that the trend is to prorate coverage between co-insurers. *Id.* at 725-726. The court, however distinguished its case from *Fireman's Fund* on several bases.

The policies at issue in *Hartford* were as follows:

>The Travelers policy provided that the coverage was primary except in limited instances pertaining to fire insurance, when it was excess. The relevant portion of the Travelers endorsement titled "Other Insurance-Additional Insureds" added that the Travelers coverage was also excess as to "valid and collectible insurance available to [MPOC] if you

|   |   |
|---|---|
| 1 | are added as an additional insured under any other policy." |
| 2 | The Hartford policy also provided that it was primary, except when there is other insurance for fire, extended coverage, builder's risk, and similar coverage, and when Cornerstone was an additional insured under another policy. When its coverage was primary, the Hartford policy provided that Hartford would share with other valid and collectible primary insurance. |

*Id.* at 726.

The court, therefore, distinguished its case from that in *Fireman's Fund* because the Travelers and Hartford policies "contain narrow exceptions to their operation as primary insurance." *Id.* The court found that these clauses were not analogous to escape clauses because "[t]here are no broad 'excess only' clauses in either policy that purport to make the coverage excess whenever there is other insurance. Both policies declare themselves to be excess in the situation where the parties and the insurers are most likely to intend that result–when the insured is covered as an additional insured on another party's policy for some specific event or situation." *Id*. The court further found that such clauses are not in conflict and literal interpretation of the policies would not leave the insured without coverage, unlike in *Fireman's Fund*. *Id.* at 727. The court held:

> Equity should not be employed to override the terms of the insurance policies in this case. By its terms, the Hartford policy is primary except in specified instances that do not apply to this case. The Travelers policy is primary except in the specific instance that does apply in this case–when the insured is named as an additional insured under another policy, which makes the Travelers policy excess by definition. Because the policy terms, as they apply to this case, do not conflict or offend public policy and do not infringe on any rights of the insured, there is no reason to disregard the express terms of both policies.

*Id.*

Similar to the provisions in *Hartford*, this Court finds that the other insurance provisions in the policies at issue in this case are not, in fact, conflicting. As explained above, the St. Paul Policy provides that it is primary insurance except when there is other primary insurance, then St. Paul will share coverage. However, the St. Paul Policy further provides that it is "excess insurance over the part or parts of any primary or excess other insurance that provide . . . protection for you as an additional insured or additional protected person." (St. Paul Policy at 62.) As in *Hartford*, this is not a broad "excess only" clause that acts as an escape clause to preclude coverage any time there is other insurance. Instead, it "carves out this intended exception to primary coverage" to

preclude coverage in a specific circumstance, including when the insured is covered as an additional insured under another policy. *Hartford*, 110 Cal. App. 4th at 726-27. It is undisputed that EMK is an additional insured under another primary insurance policy—the Peerless Policy originally issued to Carvalho and later endorsed to include EMK as an additional insured. That, under St. Paul's terms, makes St. Paul excess insurer over Peerless' primary insurance under the clear language of the policy..

Moreover, the Peerless Policy does *not* provide for excess insurance under the circumstances of this case. The Peerless Policy provides that it is "primary insurance" except when the "excess insurance" provision applies. Further, "[i]f this insurance is primary, our obligations are affected unless any of the other insurance is also primary. Then we will share with all that other insurance . . . " (Peerless Policy at 84.) However, the Peerless Policy provides that it will be excess insurance when other insurance provides coverage for fire, extended coverage, builder's risk, property damage to property rented to the insured, and other enumerated circumstances not applicable in this case. The Peerless Policy also provides that it is excess insurance if any other primary insurance provides coverage for the insured "as an additional insured by attachment of an endorsement." (Peerless Policy at 84.) But, EMK is not an additional insured under St. Paul's policy. Nor are there any other circumstances in this case qualifying Peerless as excess insurer. This is exactly the situation in *Hartford*.[5]

Accordingly, under the language of the policies, the Court finds that Peerless is primary insurer and St. Paul is excess insurer under the facts of this case.

Furthermore, the Court finds that Peerless' attempts to distinguish *Hartford* and establish that the equities of this case lie in favor of pro-rating coverage are unavailing. In distinguishing *Hartford*, Peerless makes much of the fact that in *Hartford*, the tenant agreed to indemnify the

---

[5] This is easily illustrated by inserting the policies at issue in this case into the language in *Hartford*:

> By its terms, the [Peerless] policy is primary except in specified circumstances that do not apply in this case. The [St. Paul] policy is primary except in the specific instance that does apply in this case–when the insured is named as an additional insured under another policy, which makes the [St. Paul] policy excess by definition.

*See Hartford*, 110 Cal. App. 4th at 727.

landlord, whereas in this case, the lease agreement between Carvalho and EMK did not contain an indemnity provision. (*See* Peerless Reply to St. Paul Opp. at 4-5.) Peerless also conclusively argues that the tenant in *Hartford* expressly agreed in the lease to endorse its policy to provide for primary insurance, and that there is no such provision in the present case, but without asserting why this matters. To be sure, the *Hartford* court did find that the "terms of the lease . . . requiring indemnification, additional insured status and excess status for the landlord's insurer, illustrate the intent of the parties . . ." 110 Cal. App. 4th at 723. This entire discussion, however, pertained to whether the policy "limit[ed] coverage to liability directly caused by [the tenant's] operations or use of the premises" and takes places in a section completely separate from the discussion involving the "other insurance" clauses. *See id.* at 715, 723. In fact, the *Hartford* court explicitly held "[t]he result in this case is based on the language of the relevant policies," *not* contractual indemnity.[6] *Id.* at 727-28.

As to where the equities lie in this case, Peerless contends that Peerless read its policy broadly and provided coverage to EMK while St. Paul continued to read its policy in the light most favorable to it, despite the similarities between both policies' "other insurance" language. (Peerless Reply to St. Paul Opp. at 6.) Thus, Peerless argues that the equities sound in awarding pro-rata coverage, as both were intended to be primary insurers and now only Peerless is defending and indemnifying the underlying action.[7]

---

[6] Peerless also contends that the endorsement in this case is a specific form 2011 endorsement while the *Hartford* endorsement was described as "a special broad form general liability endorsement." (Peerless Reply to St. Paul Opp. at 5-6 (citing *Hartford*, 110 Cal. App. 4th at 727).) Peerless concedes, however, that this distinction "is less than clear" in the *Hartford* case, but that the "length of treatment given in the opinion leads to the conclusion that the fact that Peerless' endorsement is not a 'special broad form general liability endorsement' is evidence that the policies at issue are distinguishable such that Hartford is not particularly instructive." (*Id.*) This argument is conclusory and without merit. Lastly, Peerless points out that the *Hartford* decision only reviewed the trial court for an abuse of discretion. While this is true, it makes little difference. The logic and rationale behind why the trial did *not* abuse its discretion, according to the appellate court, remains sound and analytically persuasive.

[7] Furthermore, Peerless asserts that Carvalho already satisfied its obligations through its workers' compensation insurer. Thus, Peerless asserts that not only is Carvalho utilizing its workers compensation insurer, it is also being taxed by its liability insurer, Peerless, albeit through its additional insured EMK. In other words, Carvalho is ultimately paying premium on both insurance policies which provided coverage based on the same Rodriguez action—Peerless and its workman's compensation insurance. This argument, however, is neutral at best. Pursuant to the lease agreement

1    It is undisputed that the Court has discretion to apply principles of equity in interpreting the terms of the policies. To be sure, *Hartford* recognized that this was an equitable determination. But, the *Hartford* and *Fireman's Fund* courts both also properly noted that "'contractual terms of insurance coverage are honored whenever possible. The courts will generally honor the language of excess 'other insurance' clauses when no prejudice to the interests of the insured will ensue.'" 110 Cal. App. 4th at 725; *see also Fireman's Fund*, 65 Cal. App. 4th at 1304-05. In *Hartford*, the court did not allow the equities to override the unambiguous express language in the policies, which did not prejudice the insured, did not run afoul of public policy, and explicitly provided that one insurer was primary and the other excess. *Id.* at 727. The Court finds the same here. The policies are not in conflict, the insured is not prejudiced as it still receives full defense and indemnity, and both St. Paul and Peerless are providing coverage to the extent expressly set forth in their policies. Any alleged inequities do not override this determination.

## CONCLUSION

In light of the above determination, the Court finds that Peerless' claims for equitable subrogation,[8] equitable indemnification,[9] and equitable contribution[10] fail as a matter of law.

---

between Carvalho and EMK, EMK was added as an additional insured in order to protect EMK from any coverage issues arising out of damages on the premises that were being leased by Carvalho. It is not inequitable or unforeseeable that Carvalho's policy with Peerless would be taxed if such an event did indeed occur.

[8] Peerless seeks equitable subrogation from St. Paul in the amount of $424,390.57, the total amount paid by Peerless in defense and indemnification of the Rodriguez action. (*See* Peerless MSJ at 8-9; Peerless Opp. to St. Paul MSJ at 17.) Equitable "subrogation has been defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim." *Fireman's Fund*, 65 Cal. App. 4th at 1291. To receive equitable subrogation, an insurer must prove, among other elements, "(a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer [and] (b) the claimed loss was one for which the insurer was *not* primarily liable . . . ." *Id.* at 1292. Given the Court's determination that Peerless' policy does not preclude coverage of EMK and that Peerless is primarily liable, its claim for equitable subrogation fails as a matter of law.

[9] Equitable indemnity applies where: 1) one party pays a debt, 2) for which another is primarily liable, and 3) that in equity and good conscience should have been paid by the latter party. *United Servs. Auto. Ass'n v. Alaska Ins. Co.*, 94 Cal. App. 4th 638, 644-45 (2001); *see also Aetna Life & Cas. Co. v. Ford Motor Co.*, 50 Cal. App. 3d 49, 53 (1975) ("The essential ingredients of Aetna's cause of action for implied indemnity are (1) that Aetna was secondarily liable for a wrong for which Ford was primarily liable, (2) that Aetna was not guilty of active negligence, (3) that the circumstances of the case are such that equity would require indemnification, and (4) that Aetna was

1  Furthermore, the Court finds that St. Paul is entitled to reimbursement of the expenses paid in the
2  defense of EMK prior to St. Paul withdrawing that defense in the amount of $30,022.64.[11]
3      Accordingly, the Court **GRANTS** St. Paul's motion for summary judgment in its entirety
4  and **DENIES** Peerless' motion for summary judgment in its entirety.
5      The Clerk shall close the file.

7  IT IS SO ORDERED.

9  DATED: June 15, 2010

10                                  *Janis L. Sammartino*
                              Honorable Janis L. Sammartino
11                               United States District Judge

---

21 not a volunteer in settling with Sillen, the injured party."). Peerless seeks "pro rata indemnification from St. Paul with respect to the $270,000 paid under the Peerless policy" in settlement of the Rodriguez action. (Peerless MSJ at 20.) As explained above, pro rata indemnification is not warranted in this action, based on the language of the policies and the equities at issue.

[10] Equitable contribution "assumes the existence of two or more valid contracts of insurance covering the particular risk of loss and the particular casualty in question." *Fireman's Fund*, 65 Cal. App. 4th at 1295. This claim fails, therefore, because the Court finds that the other insurance provisions are not in conflict or otherwise against public policy.

[11] As stated above, equitable indemnity applies where: 1) one party pays a debt, 2) for which another is primarily liable, and 3) that in equity and good conscience should have been paid by the latter party. *United Servs. Auto. Ass'n v. Alaska Ins. Co.*, 94 Cal. App. 4th 638, 644-45 (2001); *see also Aetna,* 50 Cal. App. 3d at 53. Given that Peerless is primary insurer, it is liable for all expenses paid in defending and settling the underlying action, as it is all within the coverage limits in the policy. Thus, St. Paul is entitled to reimbursement of the expenditures it paid in defense of the underlying action.